Case No. 15-719 et al. Ashima Reed et al. Appellants v. District of Columbia. Mr. Tirca for the appellants. Mr. Lowe for the athlete. I will confess that I left you like two minutes ago. Please, the court. Yes, go ahead. Good morning. I'm Douglas Tirca. I have represented the plaintiff appellants in the fees litigation in this case after Nicholas Ostrom represented them in the substantive IDEA litigation. As the court is aware, the appellants have identified several abuses of discretion on the part of the district court, including multiple instances of blatant disregard for record evidence. We think that many of those warrant reversal or a vacation of the order. But I would like to start not with the brief begins, but with some of the issues that have the potentially the broadest impact on cases outside of this one. The first of those is the district court's application of an hourly rate based on no evidence of actual market rates and a rate that stands directly contrary to the voluminous evidence that such a rate will not attract competent counsel. As we address in our brief, the district court in making that decision wrongly applied a legal standard and acted as if the question is, are there some attorneys who are willing to take some cases at this rate? In fact, as we know, the actual question is, is the rate applied in line with prevailing market rates? The district court made no attempt to identify prevailing market rates. But isn't that issue waived? You didn't object to the magistrate judges on that issue, right? On a determination of prevailing market rates? There's two ways. Can we just get the framework of this so we clear it? There's two ways. Rates have to be reasonable, right? Yes. One way to establish reasonable rates is to show that they're the rates that are charged in the market for that kind of case, right? Yes. The other way is you can try to qualify for laughing rates, in which case the case has to be complex, right? Yes, sir. Okay, so which of these two are you talking about? At the moment or in our brief? In our brief, we address both of them. Let's make sure we're talking about which one, which avenue you are arguing about in order to get higher rates. Are you talking about the first one I mentioned, that is that you're seeking rates that prevail in the market for IDE cases? As we stand here, we are arguing, and in our briefs, for both avenues. At the moment, I was actually addressing the district court's support of its rate. I'm happy to switch to our support of our rates. Why don't you do that? I think that would be better, okay? I will start with the, again, one that has more broader implications for other cases, and that has to do with the applicability of the laughing matrix and whether this case is complex enough. As Your Honor, as you pointed out, Ely left us in a situation where, I think, fee applicants under federal statutes that have not yet, or to which this court has not yet applied laughing, must establish sufficient complexity for the applicability of a laughing matrix. The court did not specify how that would be done. The court in Ely just left it as an open question. But the court did say, do you agree, that it's plaintiff's burden? Absolutely. Okay, so it's plaintiff's burden to show that IDE cases are equally complex to cases that receive laughing fees, like employment discrimination, antitrust, things like that, right? I don't recall offhand whether the phrase is equally or sufficiently, but yes. That's the principle, right? Yes. Right. And we have done that with multiple affidavits from lawyers who have practiced both in IDEA litigation and in areas of litigation to which this court has applied the laughing matrix. And those lawyers all said that IDEA litigation is at least as complex as litigation in those other areas. Well, did they explain it? They did absolutely explain it. Show me the best place in an affidavit where a lawyer explained it. May I present that on rebuttal rather than right off the record? Whatever you want. The lawyers consistently talked about the fact that IDEA litigation requires the development of an expertise in many areas outside of the practice of law. Right. They also talked about the problems of the lack of traditional discovery. Usually the district argues that these cases are not as complex. And, in fact, this is what the district court said. They are not as complex because they don't involve depositions and document productions and those sorts of things. In fact, the lawyers explained that they're more complex for that reason because IDEA practitioners are walking into cases having no idea what they're going to face. So they need to prepare for every possibility, entirely new defenses from the district, including defenses from expert witnesses who they've never heard from before. So they did, in fact, explain in detail why it is at least as complex as litigation in those other areas. And, importantly, the district presented no contrary evidence to this. So we do not contend that the plaintiffs here presented a perfect case. I'm not sure what a perfect case regarding complexity would be. It's a difficult issue to establish. Okay, so I want to just state what I think. Can you tell me if this is an accurate description of what your affidavits do? Because they all basically say the same thing. One is that, and I'm not making a judgment on whether this is adequate or not. I want to see if you agree with what I think it does. Number one, that lawyers who handle IDEA case, administrative cases, require non-legal expertise in areas of education, psychology, things like that, right? Yes. Okay, and number two, that because there's no discovery, that lawyers have to be far more nimble, correct? Is that the point? Nimble is a word for it, but I would say that lawyers have to prepare for multiple cases at one time. They have to do what? They have to prepare for multiple cases at one time. You mean because they don't know what the defense will be? Yeah, so instead of relying on nimbleness, which would be a bit reckless, I would say, one has to prepare for any number of possible cases they may see walking in the door. Okay, and although, you know, my own instinct is, you know, this court could make the judgment about whether that's equally complex. ELE requires that you to make the case, right? That they're equally complex to school desegregation or antitrust or employment discrimination, right? Yes, Your Honor. That's the next part of your requirement, and you're going to, on rebuttal, you're going to read me the best portions of the affidavits that say that, right? I will, Your Honor. But you agree I've got the right framework, right? Yes, Your Honor. Okay, fine. I think those are the major points in the affidavits. Yeah, okay. I do want to point out that this court's argument that these cases are not sufficiently complex because they do not have luminous discovery, were that true, then ELE would not have come down the way it did. ELE left open the question explicitly whether these cases were complex enough. Well, of course, the court in ELE knew that IDEA litigation does not involve complex discovery. We all know that. Well, no, the affidavits in ELE didn't say anything at all, hardly. Your affidavit in ELE, as I recall, simply said, here's the matrix and here are my rates, right? Yes. You didn't say anything else. But we know from reading the statute that, and the court, of course, knew from reading the statute, that IDEA litigation does not involve complex discovery. Furthermore, the district in ELE did argue exactly that point. They said these cases are not sufficiently complex because they do not involve luminous discovery, et cetera. So the circuit court had that. This court had that argument before it. And were that the case, that that were the necessary kind of complexity, as a district court argues, then this court would have simply said, that's it. IDEA litigation is not sufficiently complex. No matrix can apply. What do you think complexity means in this standard? What do you think it means? I believe that it means requiring a great deal of learning and preparation over time to acquire an expertise. Well, that's expertise. That's not complexity. It says complexity. But only a complex area of study or law will require a lot of time to achieve competency. If it is a very simple case, then any law school graduate can handle it. If it is a complex area of litigation. But you could have an actual very simple case that has difficult legal issues. That doesn't make the case complicated, does it? Well, I think in that question. I'm just asking. I don't know. As a district court said, no one's ever defined this, right? As far as I know, no one has. Do you think I'd be accurate to say, I mean, we've all written a lot of opinions involving cases that are entitled to lofty rights, like employment discrimination and antitrust. And actually, I've litigated a lot of school cases. So if you were asking me what it is, I would say those cases are complex because they involve complicated legal issues. They involve complicated and difficult legal issues. They involve complicated and sophisticated factual questions. And they're procedurally complex. Does that sound right to you? I think those are all possible components of complexity. But this court did not recommend an analysis of the complexity of individual cases. Correct. We're not supposed to look at an individual case, right? We're supposed to look at the category of cases, correct? Correct. That's my understanding. On the question of complexity, our evidence was not limited to the affidavits. We also gave unquestionably objective evidence of what happens with competent firms when they enter the field of IDEA litigation. And we presented these cases. We showed the billing records of well-respected firms who spent from eight to 60 times as much time as Mr. Oshum spent on these cases, trying to get their own IDEA litigation done. And so billing the minimum number, that number of eight times, I would say, in keeping with my definition of complexity that I offered before, I would say that if an otherwise competent firm, upon entering this field of litigation, has to spend eight times as much time to master it as Mr. Oshum did, that indicates that there's a complexity here that will take some time for that firm to learn. It's possible that a case could be time-consuming and not be complicated. Right. Yes? So it doesn't follow that the fact that a firm spends more time on it establishes that it's more complex. But it is some evidence. And, again, we offered the only evidence in this case. Now, the district, when we presented that evidence of those comparison cases, the district did not question our analysis. So we could have a case that was, for some reason, exceptionally time-consuming but was in a simple area of litigation. But, in fact, what we did when we looked at these cases, we compared the issues at hand. We said, these are cases that are comparable to our cases. Nonetheless, they spend all of this time on it, which seems to indicate to us that it requires, that it has a complexity that requires some study by newer firms. Can you switch, I mean, switch for a minute from the, whether this is complex litigation. I mean, your other argument, I think, is that the district court was wrong in finding that the prevailing market rate was what the district court relied upon. And I'm not sure I understand that. The district court was looking at a lot of cases in which the rate that you received is the rate that's been applied fairly consistently. In response, what you offered was very modest, focused more on the complex question than on the prevailing market rate. Right? That's one of our multiple arguments. We also addressed. But, I mean, what I'm suggesting is that seems to me kind of a frail argument that on prevailing market rate, the prevailing market rate appears to be what the district court said, or at least the district court seems to have a strong foundation for that conclusion based on cited litigation. Right? Especially, I disagree. And for two reasons. One, the district court in this case, so the district does make the argument that I think you have pointed out, Judge Edwards. The district court did not, in fact, say there's a pile of cases here that must be the market rate. The district court said something a little bit more complicated, which was these awards have been made in the past, and there are still attorneys standing taking these cases. Therefore, this must be sufficient to attract counsel. No, that's a different question. I think you're conflating them. The district court said there are these cases, so that seems to be the prevailing market rate, to which you say, you seem to be saying, and I think it's a perfectly reasonable argument, may or may not be true, but we can revisit this if we can show you that it's not enough to attract attorneys. And then the district court responded to that. I'm trying to disaggregate this. There's complex, there's prevailing market rate, there's whether it's enough to attract attorneys. Now, we've gone through the complexity question. Prevailing market rate, it seems to me the district court's correct on it. I don't see you really refuting it in your evidence, but I do see you saying, essentially, maybe so, but it won't attract anybody, and the district court responded to that. Now, have I got that right? Respectfully, Judge Edwards, I disagree that that was the district court's analysis. I think the district court, in fact, made the other analysis that I presented. However, the district has, without question, made the argument. So you're saying the district court did not rely on the fact that cases have used this rate? I don't think the district court relied directly upon that. And, in fact, the district court indicated much the opposite. On 473 of the record, the district court said, and it was addressing our evidence, the district court said that it was not appropriate to rely on just some assortment of cases that had awarded the same rate, that it wasn't going to take that approach. Instead, it lays out its approach on pages 475 to 476. And what it says is many cases have ordered rates like these. That's what I thought. But it's the second step, Your Honor. Many cases have ordered rates like these, and there are still attorneys litigating these cases. Therefore, these rates must be sufficient to attract counsel. That's my read of the district court's order. However, I do think this is an important issue to address, and I'm happy to address it, particularly with this panel. This question of whether prior, and I'll just note that I'm well over time, but I do want to answer it. Well, you keep going until we're done. This argument that the district has made in all of these cases, and some courts have also ruled in this way, that prior district court decisions on fees serve as evidence in a present case. The question there, though, is were those decisions themselves based on market evidence? And that's a decision that Ely never answered because Ely never got to the quality of the district's evidence because Ely plaintiff had not presented sufficient evidence. Because if you have enough of those cases, the answer is self-evident. That is the market pressure. I disagree, Your Honor. That doesn't mean that it's an adequate rate. It means that that is what is happening in the market. If time after time after time, this is what appears in the district court, and this is what you get. But district court judges are not members of the market. They are not negotiating with lawyers over hourly rates. Right. The market rate, is that what you mean by the market rate? Yeah. The market rate is the amount lawyers charge their clients that they can get in the open market for these cases, correct? Correct. In other words, if you have a paying, if you lawyers who bring these cases, presumably you're paying clients and clients who can't afford to pay your fees. So the market rate is what are you charging, what are clients who pay their own fees paying? That's the market rate, right? Yes, and that's exactly what we established with our district. See, that's an interesting question to me, and I'm not sure that's right. When an attorney takes a case and knows it may involve litigation, one of the things I think we used to consider is if it goes to litigation, we have to seek fees, which most of them want to do. We understand what the cap might be, and we're still going to take the case. That's part of your market rate consideration. It's not just what I say to the client. Here's what I'd like to charge. Are you willing to pay that? The person says yes. But if it goes to court and you have to ask for fees, see, you would have to show that in all those cases, not in all, in some of those cases the attorney-client conversation is we go to court, I'm only going to be able to get 75%. You have to make it up. Is that what your evidence shows? Our evidence shows that there are firms that have paying clients who are committed to pay those rates and have paid those rates, independent of whether there was any fee award whatsoever. And this Court has, in fact, Judge Edwards, this Court has, in fact, addressed this question of whether prior district court decisions can be used as direct evidence of market rates. And in Concerned Veterans, which I believe is the first case in which this Court ever mentioned using decisions as evidence, and perhaps the Court was using the term very loosely, but whether it was or not, the Court then put a footnote out, as we cite in our brief, that very explicitly cautioned against exactly what the district argues that the Court do here. It said, do not present a wonder bus, was the term, do not present a pile of cases that go your way unless those cases are themselves based on market evidence. And what we have here from the district and arguably from the district court is a house of cards, none of which is based on any market evidence, all of which trace back to a single case roots and one sentence from that single case. And the district, we have challenged them repeatedly, the district cannot point to a single one of those cases that actually looks at real market evidence. Mr. Turcotte, what the DCPS says that this part of your argument is forfeit because you didn't object to the magistrate, you didn't make this argument, you didn't argue the magistrate judge had ignored this evidence. What's your, right? That's their argument, isn't it? My understanding is that they have argued that Isn't that what DCPS is arguing here? My understanding of their waiver argument, their only waiver argument, is regarding the neighbor's affidavit and regarding the evidence of a prior affidavit of mine in the Yieldy case. Yeah, your affidavit and neighbor's affidavit. Isn't that your argument here? No, no, my argument is twofold. One, we have those affidavits that are direct market evidence. Two, we have the complexity evidence that justifies the magistrates. Well, forget the complexity evidence. Nobody's arguing that's waived. I was only talking about the prevailing rate evidence. And that evidence is in your affidavit and the neighbor's affidavit, right? My affidavit is cited in Yieldy, correct. Yeah, and the district says you didn't object to the magistrate judge's decision on that grounds and therefore it's waived. Well, they do argue that and there's multiple problems with that. Well, that's why I asked you the question because, you know, what's your response? Well, first, the district cites a case in which the fee applicant or, excuse me, the plaintiff had filed no objections whatsoever. Here we clearly filed objections, and we very exclusively on the second page of the objections stated that our objection was to the hourly rate employed by the magistrate judge. Yeah, but that was about the complexity. Well, it was about the hourly rate overall. Well, it was about the complexity issue, and we all agreed there's two different bases here for getting rates. And that was your objection there. You said, in fact, you don't even object. Your only response to the forfeiture argument, as I read it, is that your reference to the summary judgment papers were enough to preserve the issue for appeal, right? That's what you say. We think it is, and additionally, I'll note that the magistrate judge— You say you ask the court to consider all the arguments in their motion for summary judgment, but under the rules that can't be enough, right? Because, you know, Section 631B1, district court must review to know that only those portions of the magistrate were that are objected to. In other words, a general objection isn't enough. But we objected to the determination of the rate, and— But that was on complexity grounds. And if I may, Your Honor, the district court's total overlooking of the affidavits, that was a mistake made first by the district court. The magistrate judge had, in fact, not entirely overlooked the affidavits. The magistrate judge had looked at them, said they weren't enough. But the district court did not look at them at all, and that is the basis of our appeal. All right. Do you have any other questions? No. Okay, thank you. Thank you. Mr. Love.  May it please the court, Richard Love for the District of Columbia. This is an abuse of discretion case, and we would submit that the district court didn't abuse its discretion in finding that the plaintiffs had failed to submit sufficient evidence to establish that the rates they requested are in line with the rates prevailing in the district. Before you get into the general— Yes. Before you get into the general part of your argument, the last call forward between Judge Tatel and Judge Counsel was concerning the breadth of your waiver. Your waiver argument, excuse me. What exactly do you say they have waived by not raising? The market rate information. I agree with Judge Tatel's position. Well, wait. I just asked him a question. I haven't said what my position is. I just asked him a question about your argument about waiver. Yes, and Judge Tatel— So I don't know whether you're right or wrong. No, I wasn't suggesting that. I thought you had identified the market rate issue as having been forfeited, and that was our claim. But Mr. Turkus had a response that what he's objecting to is the district court's failure to consider those. I'm sorry. He's objecting to the district court's failure to consider the market rate evidence. I understand that, but he didn't raise that in his papers before the district court is our position. At what point did he fail to raise it when he should have raised it to avoid forfeiture? He should have raised it in his objections to the magistrate judge's— But his position is that the objective—that to which he objected did not exist at that point. The magistrate judge had, in fact, considered the evidence, but the district court did not. If that's the case, then he could not have raised it before the district court had issued its opinion. Well, but respectfully, the district court didn't address it because he didn't raise it, is our position. So your point is he didn't raise it in the district court? He didn't raise it in the district court in his objections to the district judge of the magistrate's report recommendation. But if he had read that the magistrate judge had not committed that particular error, then he could not have raised it in his objections. Well, I didn't—I heard the opposite. I heard that the magistrate judge did make that—that they did object to the magistrate judge's failure to address that or the way the magistrate judge addressed that. And that the point he's raising here is the district court's failure to address the market rate evidence that they submitted. The district court didn't address it, is our contention, because it wasn't raised in his objections to the district court. Is it your position—I want to move on to—did you have another question about that? Sorry? Did you have another question about that? No, I'm good. Wait, I want to make sure. You're saying he didn't raise it. The record says at JA 395, the magistrate judge recommends the application of hourly rates for most of the work equal to 75 percent of the rates in blah, blah, blah. Those rates are well below reasonable rates because they do not accurately reflect prevailing rates, because they are based on unsupported inflation adjustment methods, and because they do not reflect the evidence of market rates presented in sworn statements. So it was raised. What are you talking about? It's in the introduction to their objections. Well, I— Well, I'm reading it, so— I understand. So I understand why you can say it wasn't raised. But they—they raised various— No, no, no. Let's stick with this. They're saying the prevailing market rate is wrong. It doesn't address affidavits that were presented. The district court's—I mean, the magistrate's got it wrong, and their argument is the district court didn't address it. Well, I think that their—what their argument is, if you go on beyond that introductory paragraph, none of it talks about the statements that they submitted, which indicated that a firm had charged and received from non-contingency-paying clients the enhanced— What are the affidavits, sir? None of that is discussed. What are the affidavits, sir? Well, they're—all the affidavits are going to the complexity issue. I mean, they submitted, along with this—these objections, five sworn statements concerning the complexity of ideal litigation and the fact that it was sufficient. Well, I'll ask them on rebuttal because they certainly referred—they certainly make the objection in very clear language, and they say what they think supports it. Okay. And then, Judge Edwards, also, if you look at their reply brief, what they indicate in response to the argument that the district raised, they rely on page 394, their sentence that says, The plaintiff asked this court to consider all of the arguments and evidence presented in their motion for a summary judgment and their reply opposition incorporated by reference. That's the argument that they say preserved the argument, and we submit that's not sufficient. So even in their reply, they don't rely on the following page. I'm sorry. That's okay. That's a good question. What's the answer to my question? Is it the city's position that IDE cases are not complex, or is it your position that plaintiffs here haven't demonstrated it? Well, the primary position is the district court did not abuse its discretion in finding that they were not sufficiently complex to warrant the rates that were requested here. But the plaintiff is wrong when he says the district submitted no evidence to rebut their contentions of complexity. The district submitted numerous cases where court after court has found— Cases? Cases. That doesn't help you. That's not the market. No, no, I'm not talking about the market. I'm talking about whether or not there was any— We have to make a judgment. Our issue here in this appellate court is—do you agree with me? The question is, did the district court abuse its discretion in concluding that IDE cases are not sufficiently complex for Lafey rates? That's the question, right? That is right. Okay. So they have evidence, which I want to ask you about in a minute, that it is. That's what they say in their affidavits. You just responded by saying—and they say that evidence is uncontested. You just responded to Judge Edwards by saying, well, we cited cases, right? Yeah. But those courts may be right. They may be wrong. That's not evidence of complexity, right? Well— Here, let me ask you this way, very precisely. One of their major arguments in all their affidavits is that IDEA lawyers require a great deal of non-legal expertise, right? Right. Psychology, education, language, all kinds of things, right? Do you have an affidavit challenging that? No. We didn't have any affidavits that were submitted in argument. We identified cases where the courts have found it is not generally complex. We also identified the Title VII Laffey, which is at the base of these matrices, and the complexity of that case, that it was a litigated case that resulted in a lengthy trial. It was, I believe, a class action case. We pointed to Covington, which identified the evidence. But there are lots of IDEA cases that meet that standard, some of which have been decided by this court. Well, I think what the court here found, and I think reasonably so, that structurally IDEA is different than Title VII or antitrust litigation. I thought he just found that plaintiffs hadn't demonstrated that it was equally complex. Am I wrong about that? I don't think the court abused its discretion in finding that it was different, that it was qualitatively dissimilar from these litigation because IDEA is structured through very defined procedures. It's an informal proceeding before an administrative law judge without the rules of evidence being applicable. Well, let me ask you this. Do you think we should, are we looking at this question, are we looking at the administrative process separately from the litigating process? Remember, we have to decide, the issue is, are IDEA cases as a class? Not this case, but IDEA litigation, is it sufficiently complex to get Laffey rates? And you're focusing just on the administrative process. Well, that was what the court here ruled. The court here ruled on cases involving administrative cases before a hearing officer in which the plaintiff prevails and thereafter files a district court action seeking fees. That was the class of cases which the court was reviewing here and found were qualitatively dissimilar. It's about my question generally about whether we can really separate administrative proceedings from litigation. What do you think about that? Well, I think you can distinguish them. I think the court properly did so here. You mean so it's possible that you could get Laffey rates for the litigation but not for the administrative proceedings leading up to it because they're not complex? Well, I think generally the same structural differences exist in cases that are litigated before the district court because generally, not always, generally they're a record review. So the same structural dissimilarities that exist on the administrative level would exist on the district court level in the situation where the actual hearing officer's finding was disputed. Generally speaking, most of them that I'm familiar with are a record review where not additional evidence has been submitted. Certainly there's been no discovery. There's been no motions practiced. So I think you could, for those reasons, find that it was equally applicable even in the situation where the hearing officer's decision was litigated in district court. Are you done with that subject? I want to change the subject. Yeah. Okay, I just have a quick question for you about the settlement conferences. Yeah, I have that. The Ostrom Declaration says that he said when he was advised of me, he said there was no IEP team present and the law requires that there be an IEP team present. There was no one who indicated any specific knowledge of the facts of the complaint and the law requires that. And he says actually to the contrary, he said the person who was there didn't know anything about it. And then he says there was nobody from DCPS who had decision-making authority. In fact, he says every time a proposal was made, he had to respond. So why doesn't that affidavit, which is uncontested, shift the burden sufficiently, indicate isn't that sufficient at least to make a prima facie case that this was not a statutory resolution? We certainly found that nearly. Right. Well, I think I understand the court's point on that issue. So do you agree with me that? Are you conceding this point? I think the only point I would raise is, I mean, from the district court's perspective, there is a statute that everyone agreed excluded compensation for what certainly would be a settlement conference in whether or not, even if it was not, if it had the deficiencies that are, as you indicated, unrebutted and that plaintiff identified, why these meetings nonetheless would not be statutorily excludable sessions. I think that's what the district court's finding. Well, actually, what he said was, and I respect your caution about this one. I mean, here's what he said. He said the records indicate that the so-called settlement conferences satisfied at least some of the statutory requirements. And from that, he concluded, he said that creates doubts as to whether compensation. I would suggest that if it only meets at least some, that's indicating that it didn't meet all. Right. And that would be enough. In other words, the conclusion should be, okay, these are probably not resolution conferences. Right? Yes. Okay. Yeah. And if they're not, then what's the next conclusion? Well, if they're not, then they would be compensable. And whatever the reasonable rate is. Right. Right. I would suggest that the rate that the court reasonably found was the prevailing market rate for idea cases. No. No? Okay. Thank you. Let's see. Mr. Turco, you had some affidavits to read to me, right? I do, Your Honor. Okay. 413 to 414? Yeah. 424 to 427? Well, let's just read the first one. Read the best one, would you? Read the language you're talking about. Then you can give us all the pages. As long as they're not repetitive. They are repetitive with some differences among them. This is from Ms. Sabat on 424. Every IDEA case requires specialized non-legal knowledge regarding special education. Okay. Including knowledge of other professional disciplines whose services the individual student might require. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. So that would be an additional category that's outside. I was asking for evidence that you agree with me that your obligation is to show not just that these cases are complicated, but that they're equally complicated to other LACI cases. That's what I'm looking for. Oh, okay. So they're not actually repetitive because the different lawyers who testified about this had practiced in different areas to which LAPI had been applied. In fact, Ms. Sabat is one of them. Where did she make the comparison, though? That's what I was looking for. The comparison I asked you about earlier, remember? Yeah, I understand, Your Honor. Where's that? Because according to Ely, this court can't do it itself, right? I believe not. Yeah. Will you cite them all in our brief? Yeah. Can you tell us the very parts that they put? Where it is that when someone says something comparable to what I said to you earlier, which is, here's why these cases are complex. Yes, Your Honor. IDE cases. And, you know, I litigate employment cases and antitrust cases, or I've talked to people who do, and they are complicated for the same reason and identify what those reasons are. Where's that? I'm sorry. I'm confused which one Your Honor is looking for. We have the paragraphs that address. I know you've said your cases are complex because they require expertise in non-legal areas, right? And because there's no discovery, you've got to prepare more comprehensively, right? Yes. But I don't get the next step in your affidavits. The step of comparing them to these other areas of litigation? Uh-huh. Oh, well, most of those, the way the affidavits are laid out, most of them, when the attorneys are able to make comparisons because they've worked in those areas, there is a statement, usually just in one or two sentences, saying, I have found it to be at least as complex. Okay. Those are just conclusions. And then they say, for the reasons that we state. So they say we find these to be. . . Okay, just tell me, if I'm going to write an opinion saying that you've satisfied your burden, give me the best sentence in an affidavit that says that. That is, that made the comparison. The best one? Those are the best affidavit sentence or sentences that make the comparison to other LAFI cases. What do I cite? Here's one from 424, Ms. Sabat. I have found legal work under the IDEA to be at least as complex as employment discrimination and commercial dispute work. Okay. Anything else? From Mr. Moran. This is on 430. I have found legal work under the IDEA to be as complex as the work involving ICC. Okay. All right. They're all like that, right? They're all like that, and then they present details. Anything else? Okay. Thank you both. The case is submitted.
judges: Tatel, Edwards, Sentelle